UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WALTER MURRAY,                                          :

               Petitioner,          :          06 Civ. 3677 (AJP)

       -against-                               :          **OPINION AND ORDER**

SUPERINTENDENT GARY GREENE,          :

              Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

          Pro se petitioner Walter Murray seeks a writ of habeas corpus from his January 24, 2003 conviction, after a jury trial in Supreme Court, New York County, of first degree robbery, and sentence, as a persistent violent felony offender, of 20 years to life imprisonment. (Dkt. No. 5: Ex. H:[1/] Pet. ¶¶ 1-6.) Murray's habeas corpus petition asserts that: (1) "[t]he People failed to prove [Murray's] guilt beyond a reasonable doubt, where the police did not find the broken bottle that the complainant claimed [Murray] used to take [the complainant's] chain, even though the incident had just taken place and the bottle, if it existed, could only have been discarded within a two block radius" (Pet. ¶ 12(1) at 16); and (2) Murray's "due process right to a fair trial was violated by the prosecutors [sic] summation, in which he denigrated defense counsel and [Murray] by calling the

---

[1/]      References to exhibits are to the September 7, 2006 affidavit of Assistant Attorney General Chelsea Chaffee (Dkt. No. 5).

defense absurd and ridiculous, improperly vouched for the complainant's credibility, characterized [Murray] as a liar, and appealed to the jury's sympathy" (Pet. ¶ 12(2) at 17).

The parties consented to decision of Murray's petition by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 9.)

For the reasons set forth below, Murray's habeas petition should be <u>DENIED</u>.

<u>**FACTS**</u>

Murray's conviction stems from his August 13, 2001 robbery, using a broken bottle as a weapon, of Mohammad Alom's gold chain.  (<u>E.g.</u>, Dkt. No. 6:  5/14/02 Trial Transcript ["Tr."] 226-28.)

**The Trial**

_____Alom, his wife Jasmin Alom, and police officer Christopher Shaughnessy testified for the prosecution.  (Dkt. No. 6:  Alom: Tr. 235-300; Jasmin Alom: Tr. 300-07; Shaughnessy: Tr. 311-57, 366-70.)  Murray testified on his own behalf during the defense case.  (Murray: Tr. 370-402.)

**The Prosecution Case at Trial**

Alom, originally from Bangladesh, lived in the New York City area for five years and was married to Jasmin.  (Dkt. No. 6: Alom: Tr. 236-37; Jasmin Alom: Tr. 302.)  Alom worked the night shift at a restaurant on Houston Street in Manhattan.  (Alom: Tr. 237-38, 283-84; Jasmin Alom: Tr. 304.)  To go home from work, Alom took the A-train subway northbound from West 4th Street to 59th Street (because it did not stop at 42nd Street), transferred to a southbound A-train

which stopped at 42nd Street, took the Shuttle train east to Grand Central Terminal, and transferred to a 6-train northbound to the Bronx.  (Alom: Tr. 238-42.)

On August 13, 2001, when Alom boarded the A-train southbound at 59th Street, he sat down at the very end of the car.  (Alom: Tr. 242, 262.)  Alom was wearing a gold chain with his wife's name on the medallion.  (Alom: Tr. 250, 255-58; Jasmin Alom: Tr. 305-07.)  When Alom got on the train, he saw Murray sitting at the other end of the car, holding a bottle.  (Alom: Tr.  242-45, 255, 269.)

As the subway traveled from 59th Street to 42nd Street, Murray moved closer to Alom.  (Alom: Tr. 244, 245.)  Alom recognized the bottle as a mango flavored Snapple, with one end broken.  (Alom: Tr. 245, 252, 254.)  When the train reached 42nd Street, Murray stood in front of the exit door closest to Alom and stared at Alom, which prevented Alom from getting off at 42nd Street as he planned.  (Alom: Tr. 245-49, 253, 258, 265, 269-70.)  Alom did not want to risk being hit or stabbed with the bottle as he passed by Murray.  (Alom: Tr. 246, 248, 258, 269-70.)  When the train left 42nd Street, both Alom and Murray remained inside the car, in the same positions.  (Alom: Tr. 248-49.)

When the train stopped at 14th Street (Alom: Tr. 250), Murray held the broken end of the bottle toward Alom (Alom: Tr. 254, 267, 285-87), threatened to hit Alom with the bottle (Alom: Tr. 251, 286), snatched the gold chain from Alom's neck (Alom: Tr. 251, 256-57), and ran away (Alom: Tr. 251, 267).  Alom ran after Murray.  (Alom: Tr. 266-68, 272-73, 287-88.)  Alom

followed Murray out of the subway system through the 16th Street exit and continued chasing him south on 8th Avenue.  (Alom: Tr. 268, 270-72.)

Police officers Christopher Shaughnessy and Sean Mulcahy saw Murray running toward them as they were driving westbound on 15th Street between 7th and 8th Avenues. (Shaughnessy: Tr. 314-15.) Officer Shaughnessy saw Murray turn frequently to look behind him and saw Alom chasing Murray. (Shaughnessy: Tr. 315-17.) Officer Mulcahy pulled the police car across the road to block Murray's path. (Shaughnessy: Tr. 318.)  Alom arrived and told the police what happened, including that Murray had taken his chain and that Murray had been carrying a broken bottle. (Alom: Tr. 273-75, 289; Shaughnessy: Tr. 319-20, 333, 367-69.)  Murray no longer had the broken bottle in his hand, but Alom did not know specifically where Murray discarded it. (Alom: Tr. 274, 291, 293-94, 298-99.)

The police arrested Murray and found a section of Alom's chain in Murray's pocket. (Alom: Tr. 276, 290; Shaughnessy: Tr. 320, 338.)  Murray claimed it was his own chain. (Shaughnessy: Tr. 325, 338.) Alom and one of the officers searched and found a second piece of the chain, with the Jasmin medallion, in the street. (Alom: Tr. 275-77, 290-91; Shaughnessy: Tr. 321-22, 342.) The police searched for but did not find the broken bottle. (Shaughnessy: Tr. 323-26, 328, 352-53; Alom: Tr. 291.)[2]

---

[2]     At the close of the prosecution's case, defense counsel moved to dismiss, emphasizing that no bottle or other weapon was recovered. (Tr. 359.)  The prosecution responded that Alom testified that he was robbed at "bottle point" and there is no legal requirement that a weapon be recovered.  (Tr. 360.)  Justice Tejada denied the motion.  (Tr. 360.)  Defense counsel

(continued...)

**The Defense Case at Trial**

Murray testified on his own behalf.  (Dkt. No. 6: Murray: Tr. 370-402.)  Murray admitted that he was convicted of three felonies involving property theft and four misdemeanors from 1988 to 2001.  (Murray: Tr. 371-72, 400.)  Murray also admitted giving a false name in connection with a 1992 felony investigation.  (Murray: Tr.  372, 384.)

Murray claimed that on August 13, 2001, he boarded the southbound A-train at 42nd Street and saw Alom, already on the train, sleeping.  (Murray: Tr. 374-75, 392, 393, 398.)  Murray specifically denied being on the train at 59th Street.   (Murray: Tr. 391, 401.)  When the train approached 14th Street, Murray "popped" Alom's gold chain off of his neck.  (Murray: Tr. 376, 392, 393, 397, 398.)  Murray explained that he "grabbed [the chain] with enough pressure to take it off without waking [Alom] up."  (Murray: Tr. 376.)

Murray got off the train and Alom followed.  (Murray: Tr. 376, 397.)  Alom asked Murray if he had seen anyone with Alom's chain, and Murray lied and said he did not have the chain. (Murray: Tr. 376.) Alom continued to follow Murray, and Murray continued to deny that he had the chain. (Murray: Tr. 377-78.) Murray saw a police car approaching and continued walking.  (Murray: Tr. 379.)

The officers stopped Murray, and Alom told the police that Murray had taken his chain; when the police searched Murray, they found a section of chain in his pocket.  (Murray: Tr.

---

<sup>2/</sup>    (...continued)
repeated the motion at the close of all the evidence, and Justice Tejada again denied it.  (Tr. 403.)

379, 395, 399.)  Murray admitted that he lied to the police and said that the chain belonged to him.

(Murray: Tr. 379-80, 398-400.)  However, Murray denied discarding the medallion section of chain

on the street.  (Murray: Tr. 395, 401.)  Instead, Murray claimed that although he attempted to steal

the whole chain, when he broke it the medallion section fell into Alom's shirt and then onto the

ground.  (Murray: Tr. 395-97.)

Murray testified that, while he stole Alom's chain, he never held a broken bottle nor

used any other kind of weapon.  (Murray: Tr. 380.)

### Defense Counsel's Summation

During his closing argument, Murray's defense counsel argued that "Mr. Alom's

version of what happened on August 13th[,] 2001 has been shown to be highly inaccurate and a

mostly untruthful version of what happened on the A Train that evening."  (Dkt. No. 6: Tr. 413.)

Defense counsel argued that "what really happened that evening . . . wasn't a robbery, just a simple

theft of Mr. Alom's chain" and "all the facts of this case are consistent with that version and basically

nothing supports [Alom's] version that it was a robbery."  (Tr. 413.)

Defense counsel asserted that Murray was telling the truth while Alom's testimony

was untruthful:

> [Murray] was the only one telling the truth in [the] courtroom. . . .[T]here's no greater
> support for the truthfulness of Walter Murray's version than the inconsistencies and
> lies that lie[] at the heart of Mohammad Alom's version.  If you examine the versions
> of his story, you'll find that it changes every time it's told.  His version of history
> changes, it changes to suit his purpose at the time he's telling it.  And these
> inconsistencies show you that his version of history has no firm basis in truth.

(Tr. 414.)

H:\OPIN\MURRAY

Defense counsel argued that inconsistencies in Alom's testimony regarding what he first told police (Tr. 414-15), his residence (Tr. 416), what part of his body he claimed Murray pointed the bottle (Tr. 417), and his claim to the grand jury that he saw Murray throw away the bottle (Tr. 418-21), all showed that Alom's version had "no firm basis in truth" (Tr. 414). Defense counsel also argued that Alom changed his testimony about seeing Murray throw away the bottle because Alom knew "the bottle never existed at all." (Tr. 421.)

Defense counsel concluded with an appeal to the jury's sense of "justice":

There's a popular singer in Canada named Bruce Cobert who sings a song called Justice. In that song after singing about the atrocities that have been done in the name of every kind of fanaticism you can think of, every kind of fanaticism that's been known to human kind, he sings everybody loves to see justice done on somebody else. That song says a lot about this case. It recognizes that justice is subjective, justice is in the eyes of the beholder.

Justice to Mohammad Alom is getting Walter Murray convicted of a crime he did not commit. But justice is not about revenge. Justice isn't about vendettas. Justice is objective and if we, as a people, stand for anything at this point in our history, it is this, that justice is about even-handedness and it's about fairness.

Justice for us is where people like Walter Murray, admitted thieves, have a right to be convicted only for the crimes they have committed and acquitted for the crime they didn't commit.

Justice for us means that just because an individual has a criminal record or because he's unpopular, he doesn't deserve to be convicted of a crime he didn't commit.

(Tr. 422-23.)

**Prosecutor's Summation**

Defense counsel objected eight times during the prosecutor's summation (Dkt. No. 6: Tr. 424, 425, 428, 430, 431, 438), stating a reason for only one of the objections (Tr. 430).  All but one of the objections were overruled by Justice Tejada.  (Tr. 424, 425, 428, 430, 431, 438.)

In responding to the defense's summation, the prosecutor accused the defense of "blam[ing] the victim," drawing an objection:

> [A.D.A.] BEDEROW:  . . . [Defense counsel] says to you what was Mr. Alom doing on the subway at four in the morning?  It's classical[,] blame the victim for being the victim of a crime.
>
> [Defense Counsel] MR. OLIVER:  Objection.
>
> THE COURT:  Overruled.
>
> [A.D.A.] BEDEROW:  What is he doing on the subway at four o'clock in the morning at midtown in Manhattan when he says he lives way out in East New York in Brooklyn?  What is he doing on the train at that hour?
>
> MR. OLIVER:  Objection.
>
> THE COURT:  Overruled.

(Tr. 424-25.)

The prosecutor further argued that defense counsel was trying to confuse the jury, stating: "There's a window and through the window is what happened.  And what [defense counsel] has just done, he has gotten up, fogged it, clouded it."  (Tr. 425.)  The defense's objection was

sustained. (Tr. 425.)[3] The prosecutor asked the jury to "look through the window, see what this case is all about, use your common sense, see who has a motive to fabricate and what evidence is corroborated in this case and you will reach an inescapable conclusion in this case." (Tr. 425.)

Responding to defense counsel's assertion that the crime constituted merely a theft and not a robbery, the prosecutor stated that Murray "can't pick the crime that you convict him of and that's what's going on here in this case and that's what the defendant's testimony was." (Tr. 428.)[4]

---

[3]       [A.D.A.] BEDEROW:  There's a window and through the window is what happened. And what Mr. Oliver [defense counsel] has just done, he has gotten up, fogged it, clouded it.

          MR. OLIVER:  Objection.

          THE COURT:  Sustained.

          [A.D.A.] BEDEROW:  What I'm asking you to do - -

          MR. OLIVER:  Is that stricken, Judge that, comment?

          THE COURT:  Overruled.

(Tr. 425.)  After summations, Justice Tejada clarified that he sustained the objection by saying "I sustained it.  I note the prosecutor did not return to that statement."  (Tr. 466.) Defense counsel inquired if the statement was "explicitly struck" and Justice Tejada responded:  "If it's sustained, it means it's no longer there."  (Tr. 466.)

[4]       [A.D.A.] BEDEROW:  . . . The defendant can't pick the crime that you convict him of and that's what's going on here in this case and that's what the defendant's testimony was.

          MR. OLIVER:  Objection.

                                                              (continued...)

H:\OPIN\MURRAY

Specifically addressing Murray's testimony in which he admitted taking the chain, which was found in his pocket, but denied holding a bottle, which was never recovered, the prosecutor said "[w]hat else would you expect [Murray] to say?  He said exactly what he had to say."  (Tr. 424.)[5/]  The prosecutor stated that "whatever [Murray] said is ridiculous, outrageous and trying to curry favor" so the jury would "compromise" and "consider lesser counts" other than first degree robbery.  (Tr. 426.)

The prosecutor told the jury that "what's quite clear in light of [Murray's] testimony" is that "somebody is lying."  (Tr. 426.)  The prosecutor directly responded to defense counsel's assertions by saying that "[t]here is nothing that Mr. Alom testified to that doesn't make sense or that is completely rebutted by other evidence in the case except for the self-serving statement" of Murray.  (Tr. 426.)  The prosecutor reasoned:

---

[4/]   (...continued)
          THE COURT:  Overruled.

   (Tr. 428.)

[5/]          [A.D.A.] BEDEROW:  . . . [Murray] says yeah, I, I took the chain but I only took this piece.  Remember that?  I only took this piece because that's the one I had on me.  They got nothing on me because I didn't take this piece, the one that has Jasmin.  So what did he say?  I saw the guy on the train, he dropped it.  Wait a minute, that's a problem.

          MR. OLIVER:  Objection.

          THE COURT:  Overruled.

   (Tr. 431.)

You saw Mr. Alom testify.  Why would he make something like that up?  Why would he care nine months later?  Why would he care when he saw the police?  Why would he care when he went in the grand jury?  Why would he care now?  You saw him, you saw his demeanor.  You think he's getting a rush out of this?  Mr. Alom has been in this country for five years.  He's married to Jasmin.  He has a young child.  He's struggling to make ends meet.  He works for Domino's Pizza, he's trying to make a good living, he's had to work late nights and unfortunately for him he's had to ride subways all over town late at night.  Mr. Alom has a right to ride subways late at night without being robbed by the defendant or being intimidated by the defendant or anybody else.  Why would a guy like Mr. Alom come in here and parch [sic] this plot and carry it through and take an oath and throw it away?  Do you think he has an interest to do that, give sworn testimony and purposefully mislead or lie?  Contrast that with the defendant.  Do you think he has an interest, purposefully take an oath an[d] lie?  Think about that for a second.  Not only that, he's admitted, the defendant, numerous times he's lied, he's lied about his name, he lied about the chain. . . . Who has an interest to make this up?  Think about that.

(Tr. 434-35.)[6]

---

[6]         [A.D.A.] BEDEROW:   . . . [Alom's] under the excitement of being robbed on the subway at four o'clock in the morning and we're supposed to believe that during the chase, where else would he have though about it, during the one block chase he concocted the story of a Snapple bottle broken at the bottom and what else do I need to makeup, [sic] let me think about this, I came from work, went to West Fourth, need to go up to 59th, down to 42nd, what do I do, go to Grand Central, up to the 6th - -

MR. OLIVER:  Objection.

THE COURT:  Overruled.

[A.D.A.] BEDEROW:  Do you think he made up that story in the twenty seconds or ten seconds that it took for this crime to occur and for the defendant to be apprehended?

MR. OLIVER:  Objection, there's no testimony.

THE COURT: Overruled.

(Tr. 429-30.)  Defense counsel's phrase "there's no testimony" constituted his only articulated reason for any of his objections.  However, Murray has not raised this comment by the prosecutor as an element of his habeas claim.

The prosecutor summarized that the case was "all about credibility. . . .Why would Mohammad Alom make this up versus why would [Murray] make this up? Why would Mohammad [Alom] get this chain back, concoct this story about a broken bottle? It makes no sense. There's just no reason for it." (Tr. 438-39.)  The prosecutor said it was not surprising that the police did not find the bottle, which Murray could have discarded.  (Tr. 437-38.)[7/]

In conclusion, the prosecutor asked the jury, "in the interest of justice and in the name of the People of the State of New York to do [their] duty, address these issues about the credibility, corroboration and common sense and find the defendant guilty and guilty of Robbery in the First Degree for using the bottle."  (Tr. 439-40.)

**The Court's Jury Instructions**

Justice Tejada specifically commented on summations during the jury instructions:

The lawyers in their summations made arguments of what they remember from the evidence.  Your memory controls.  You don't have to accept the lawyer's arguments.  If any argument they made is based on the evidence, . . . you may . . . decide how important it is.  On the other hand, if any argument is not based on the evidence and is unreasonable, ignore it.

---

[7/]         [A.D.A.] BEDEROW:   . . . I would suggest to you that this is harder than finding a needle in a h[a]ystack finding a glass bottle over a two or three block radius in New York City.  He could have thrown it uptown, could have thrown it downtown.

MR. OLIVER:  Objection.

THE COURT:  Overruled.

(Tr. 437-38.)

(Tr. 441; <u>see also</u> Tr. 411-12.)  In addition, Justice Tejada specifically told the jury that "[t]estimony which I struck from the record . . . [is] not evidence."  (Tr. 442.)

### Defense Mistrial Motion

After Justice Tejada's jury instructions, outside the presence of the jury, defense counsel moved for a mistrial based on prosecutorial misconduct during summation.  (Tr. 465.) Defense counsel made three arguments.  (Tr. 465-68.)  First, defense counsel stated that "it was improper [for the prosecutor] to argue what [Murray] was doing on the subway [at] that hour." Defense counsel reasoned that "although that argument may be leveled against a witness in the case, [he did not] believe it can be leveled against the defendant's criminal matter who has a right to be any place."  (Tr. 465.)  Justice Tejada found that the statement was a "fair comment given the thrust of [defense counsel's] argument concerning the victim."  (Tr. 466.)

Second, defense counsel argued that the prosecutor's comment about fogging the window was "disparaging to defense counsel" and "completely improper."  (Tr. 466.)  Justice Tejada clarified that he sustained the objection to that comment.  (Tr. 466; <u>see also</u> n.3 above.)

Third, defense counsel claimed that at two points during summation the prosecutor "misstated the evidence."  (Tr. 466-68.)  Justice Tejada found that the first contested statement was correct according to the evidence and the second statement was immaterial.[8]  (Tr. 468.)

_____

[8]     Defense counsel claimed that the prosecutor's description of the search area as a "two or three block radius" was "inaccurate."  (Tr. 467.)  Justice Tejada held that, "according to the evidence, [Murray] was found within a two or three block radius.  If it was a block and a half, it was within a two or three block radius."  (Tr. 468.)  Defense counsel also claimed that the prosecutor said "the police had been informed that Mr. Alom was on his way to the Bronx
(continued...)

**Verdict and Sentence**

The jury found Murray guilty of first degree robbery.  (Dkt. No. 6: Tr. 473-75.)

On January 24, 2003, Justice Tejada sentenced Murray as a "persistent violent offender" to the minimum term of twenty years to life imprisonment.  (Dkt. No. 6: 1/24/03 Sentencing Tr. 7, 11-12.)

**Murray's Direct Appeal**

Represented by new counsel (the Legal Aid Society), Murray's appeal to the First Department claimed that: (1) "the People failed to prove [Murray's] guilt beyond a reasonable doubt, where the police did not find the broken bottle that the complainant claimed [Murray] used to take his chain, even though the incident had just taken place and the bottle, if it existed, could only have been discarded within a two block radius" (Ex. A: Murray 1st Dep't Br. at 14-16); and (2) Murray's "due process right to a fair trial was violated by the prosecutor's summation, in which he denigrated defense counsel and [Murray] by calling the defense absurd and ridiculous, improperly vouched for the complainant's credibility, characterized [Murray] as a liar, and appealed to the jury's sympathy" (id. 17-22).

On October 7, 2004, the First Department affirmed Murray's conviction, holding in full:

_____

[8/]     (...continued)
and there's absolutely no evidence or any suggestion of evidence in the record that he told the police that he was on his way to the Bronx that night."  (Tr. 467-68.)  Justice Tejada held that the "second comment really has no materiality."  (Tr. 468.)

        The verdict was based on legally sufficient evidence and was not against the weight of the evidence.  Issues of credibility, including the inability of the police to recover the broken bottle used in the robbery, were properly considered by the jury and there is no basis for disturbing its determinations.

        Defendant's challenges to the People's summation are unpreserved and we decline to review them in the interest of justice.  Were we to review these claims, we would find that the challenged remarks generally constituted fair comment on the evidence, made in response to defense arguments, and that the summation did not deprive defendant of a fair trial.

People v. Murray, 11 A.D.3d 236, 236, 782 N.Y.S.2d 273, 273 (1st Dep't 2004) (citations omitted).

        On November 30, 2004, the New York Court of Appeals denied leave to appeal.

People v. Murray, 3 N.Y.3d 759, 788 N.Y.S.2d 675 (2004).

## Murray's Federal Habeas Corpus Petition

        Murray's pro se habeas corpus petition asserts that:  (1) "[t]he People failed to prove [Murray's] guilt beyond a reasonable doubt, where the police did not find the broken bottle that the complainant claimed [Murray] used to take his chain, even though the incident had just taken place and the bottle, if it existed, could only have been discarded within a two block radius" (Ex. H:  Pet. ¶ 12(1) at 16); and (2) Murray's "due process right to a fair trial was violated by the prosecutors [sic] summation, in which he denigrated defense counsel and [Murray] by calling the defense absurd and ridiculous, improperly vouched for the complainant's credibility, characterized [Murray] as a liar, and appealed to the jury's sympathy" (Pet. ¶ 12(2) at 17).

## ANALYSIS

### I.   THE AEDPA REVIEW STANDARD[9]

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

---

[9]   For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Opinion & Order, see, e.g., Brown v. Brown, 06 Civ. 10434, 2006 WL 3405480 at *8-11 (S.D.N.Y. Nov. 27, 2006) (Peck, M.J.); Simms v. Moscicki, 06 Civ. 2056, 2006 WL 2466811 at *5-8 (S.D.N.Y. Aug. 25, 2006) (Peck, M.J.); McLean v. Conway, 06 Civ. 0807, 2006 WL 2405067 at *13-16 (S.D.N.Y. Aug. 21, 2006) (Peck, M.J.); Llanos v. Goord, 06 Civ. 0261, 2006 WL 1981749 at *11-14 (S.D.N.Y. July 14, 2006) (Peck, M.J.); A.S. Goldmen, Inc. v. Phillips, 05 Civ. 4385 & 05 Civ. 5496, 2006 WL 1881146 at *28-31 (S.D.N.Y. July 6, 2006) (Peck, M.J.); Rosario v. Walsh, 05 Civ. 2684, 2006 WL 1431410 at *12-15 (S.D.N.Y. May 25, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1880958 (S.D.N.Y. July 5, 2006); Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *6-8 (S.D.N.Y. May 16, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1763678 (S.D.N.Y. June 23, 2006); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *13-16 (S.D.N.Y. May 1, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Nelson v. Sears, 05 Civ. 10341, 2006 WL 775123 at *5-8 (S.D.N.Y. Mar. 28, 2006) (Peck, M.J.); Hopkins v. Burge, 05 Civ. 8230, 2006 WL 519782 at *7-10 (S.D.N.Y. Mar. 3, 2006) (Peck, M.J.); Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *10-14 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *5-8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my earlier decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006) & 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006); Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.) (citing my earlier decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my earlier decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d 411, 417 (2d Cir. 2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd, 41 Fed. Appx. 497 (2d Cir. 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[10]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[11]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence."

---

[10]    See also, e.g., Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[11]    Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[12/]  "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d at 42.  "A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent."  Yung v. Walker, 341 F.3d at 110; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

---

[12/]    Accord, e.g., Carey v. Musladin, No. 05-785, --- S. Ct. ----, 2006 WL 3542769 at *5 (Dec. 11, 2006) ("Given the lack of holdings from this Court regarding the [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed]' clearly established Federal law."); Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[13/]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[14/]  However, "[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522.  The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." Id.[15/]  Rather, the issue is "whether the state court's

---

13/     Accord, e.g., Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

14/     Accord, e.g., Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

15/     See also, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained:  '[A] federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable
(continued...)

application of clearly established federal law was objectively unreasonable."  Williams v. Taylor, 529 U.S. at 409, 120 S. Ct. at 1521.[16]  "Objectively unreasonable" is different from "clear error." Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[17]  "[T]he range of reasonable

---

[15]     (...continued)
application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[16]     Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti, 537 U.S. at 25-27, 123 S. Ct. at 360-61; Mosby v. Senkowski, No. 05-1122, --- F.3d ----, 2006 WL 3439478 at *3 (2d Cir. Nov. 30, 2006); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[17]     Accord, e.g., Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S.

at 663, 124 S. Ct. at 2149.[18]

      Moreover, the Second Circuit has held "that a state court determination is reviewable

under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme

Court defined, legal principle to situations which that principle should have, in reason, governed."

Kennaugh v. Miller, 289 F.3d at 45.[19]

      Under the AEDPA, in short, the federal courts "must give the state court's

adjudication a high degree of deference."  Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v.

---

[18]    The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Hawkins v. Costello, 460 F.3d at 243.

[19]    Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

Cone, 543 U.S. at 455, 125 S. Ct. at 853; see also, e.g., Mosby v. Senkowski, 2006 WL 3439478 at

*2.

        Even where the state court decision does not specifically refer to either the federal

claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's
> federal claim on the merits when it (1) disposes of the claim "on the merits," and (2)
> reduces its disposition to judgment.  When a state court does so, a federal habeas
> court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state
> court's decision on the federal claim – even if the state court does not explicitly refer
> to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853

("Federal courts are not free to presume that a state court did not comply with constitutional dictates

on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362,

365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be

entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court

decision contradicts them."); Mosby v. Senkowski, 2006 WL 3439478 at *2; Hawkins v. Costello,

460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v.

McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division

held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal

case law, is a 'determination on the merits' and as such requires the deference specified by § 2254."

Moreover, "[I]f any reasonable ground was available [for the state court's decision], we must assume

that the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the

Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants'

remaining claims,'" AEDPA deference applies.), <u>cert. denied</u>, 543 U.S. 872, 125 S. Ct. 110 (2004); <u>Jenkins</u> v. <u>Artuz</u>, 294 F.3d 284, 291 (2d Cir. 2002) ("In <u>Sellan</u>, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference.").

       Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in <u>Jiminez</u> v. <u>Walker</u>, 458 F.3d 130, 145-46 (2d Cir. 2006), instructed that the court must "examine the three clues laid out in <u>Coleman</u>, <u>Quirama</u> and <u>Sellan</u>" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." <u>Jiminez</u> v. <u>Walker</u>, 458 F.3d at 145 & n.16. Using these three factors, the court should

> classify the decision as either:
>
> > (1)    fairly appearing to rest primarily on federal law or to be interwoven with federal law or
> >
> > (2)    fairly appearing to rest primarily on state procedural law.
>
> Absent a clear and express statement of reliance on a state procedural bar, the <u>Harris</u> presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim. Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d). The <u>Harris</u> presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar. Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar. No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.
>
>     The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition

> of a federal claim or refuse to review the claim because of a procedural bar properly
> raised.  The middle ground . . . does not exist.

Jiminez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello, 460 F.3d at 242 ("In Jiminez v. Walker, we recently made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits.").  Of course, "[i]f there is no [state court] adjudication on the merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies."  Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Jiminez v. Walker, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless."  Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations:  "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220.  "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II.   MURRAY'S CLAIM THAT THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HIS FIRST DEGREE ROBBERY CONVICTION SHOULD BE DENIED

### A.   Legal Principles Governing Sufficiency of the Evidence Habeas Claims[20]

---

[20]   For additional decisions authored by this Judge discussing the sufficiency of the evidence standard in habeas cases in language substantially similar to this section of this Opinion & (continued...)

"'[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979) (quoting In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970)).  However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 317, 99 S. Ct. at 2788.  Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 – if the settled procedural prerequisites for such a claim have otherwise been satisfied – the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 324, 99 S. Ct. at 2791-92.[21/]

The petitioner bears a very heavy burden:

---

[20/]   (...continued)
Order, see, e.g., A.S. Goldmen, Inc. v. Phillips, 05 Civ 5496, 2006 WL 1881146 at *58-59 (S.D.N.Y. July 6, 2006) (Peck, M.J.); Rosario v. Walsh, 05 Civ. 2684, 2006 WL 1431410 at *19-20 (S.D.N.Y. May 25, 2006) (Peck, M.J.); Nelson v. Sears, 05 Civ. 10341, 2006 WL 775123 at *9-10 (S.D.N.Y. Mar. 28, 2006) (Peck, M.J.);  Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *14 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *31-33 (S.D.N.Y. June 10, 2005) (Peck, M.J.);  Castro v. Fisher, 04 Civ. 0346, 2004 WL 1637920 at *23-25 (S.D.N.Y. July 23, 2004) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2004 WL 2525876 (S.D.N.Y. Nov. 8, 2004); Besser v. Walsh, 02 Civ. 6775, 2003 WL 22093477 at *10-13 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2003 WL 22846044 (Dec. 2, 2003); Hediam v. Miller, 02 Civ. 1419, 2002 WL 31867722 at *11-14 (S.D.N.Y. Dec. 23, 2002) (Peck, M.J.) (citing my prior decisions).

[21/]   Accord, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000); Einaugler v. Supreme Court, 109 F.3d 836, 839 (2d Cir. 1997).

> [T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant.  Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt.  In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

United States v. Carson, 702 F.2d 351, 361 (2d Cir.) (citations omitted), cert. denied, 462 U.S. 1108, 103 S. Ct. 2456, 2457 (1983).[22/]

The habeas court's review of the jury's findings is limited:

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

---

[22/]   Accord, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d at 811 ("petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence"); United States v. Middlemiss, 217 F.3d 112, 117 (2d Cir. 2000); United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) ("a defendant shoulders a 'heavy burden' in challenging the sufficiency of evidence supporting a conviction"); United States v. Kinney, 211 F.3d 13, 16 (2d Cir. 2000), cert. denied, 531 U.S. 1079, 121 S. Ct. 778 (2001); United States v. Bicaksiz, 194 F.3d 390, 398 (2d Cir. 1999) (The defendant "bears a 'very heavy burden' in challenging the sufficiency of the evidence that led to his conviction.  In considering any such challenge, we view all proof in the light most favorable to the government and draw all reasonable inferences in the government's favor.") (citations omitted), cert. denied, 528 U.S. 1161, 120 S. Ct. 1175 (2000); United States v. Russo, 74 F.3d 1383, 1395 (2d Cir.), cert. denied, 519 U.S. 927, 117 S. Ct. 293 (1996); United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993) ("[T]he defendant who makes a sufficiency challenge bears a heavy burden."), cert. denied, 511 U.S. 1042, 1096, 114 S. Ct. 1565, 1864 (1994); United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993) (burden on defendant claiming insufficiency is "very heavy" and all inferences must be drawn in the government's favor).

Jackson v. Virginia, 443 U.S. at 318-19, 99 S. Ct. at 2789 (citations omitted).[23/]

        The Jackson v. Virginia "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson v. Virginia, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16; accord, e.g., Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir. 1993) ("In considering a petition for a writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime.").

       **B.**    **Application of the Standard to Murray's Claim**

        Murray claims the evidence at trial was legally insufficient because "the police did not find the broken bottle that [Alom] claimed [Murray] used to take [Alom's] chain, even though the incident had just taken place and the bottle, if it existed, could only have been discarded within a two block radius."  (Ex. H:  Pet. ¶ 12(1) at 16.)

        Murray supports his claim by questioning Alom's credibility.  Murray states that Alom testified at the grand jury that "he saw [Murray] throw the bottle in the street," but Alom "changed his testimony [at trial] and claimed that he did not know what happened to the bottle."  (Pet. ¶ 12(1) at 16.)  Murray argues that Alom's trial testimony was "ridiculous" because "[i]f [Murray] did have a bottle, [Alom] – who testified that he was only five or six steps behind [Murray] – should have seen where and how [Murray] discarded the bottle, and if [Murray] threw it, as the prosecutor

---

[23/]    Accord, e.g., United States v. Middlemiss, 217 F.3d at 117; United States v. Kinney, 211 F.3d at 16; United States v. Russo, 74 F.3d at 1395 (quoting United States v. Martinez, 54 F.3d 1040, 1042-43 (2d Cir.), cert. denied, 516 U.S. 1001, 116 S. Ct. 545 (1995)); Mallette v. Scully, 752 F.2d 26, 31 (2d Cir. 1984).

speculated, [Alom] certainly should have heard the sound of breaking glass when it lan[d]ed." (Pet. ¶ 12(1) at 16.)  Murray further reasons that if the police and Alom "could find th[e] tiny [Jasmin] nameplate, then common sense clearly suggests that they should have been able to find the broken Snapple bottle, if it existed." (Pet. ¶ 12(1) at 16.)

Murray also maintains his own credibility by asserting that he "gave logical and credible testimony" and he "did not hesitate to admit the theft or to admit that he had a criminal record, that he had used an alias in the past, and that he lied to the police in this case when he claimed the chain was his." (Pet. ¶ 12(1) at 17.)  Finally, Murray contends that his "testimony that he did not use a broken Snapple bottle to rob [Alom] was strongly corroborated by the failure of the police and [Alom] to recover the alleged bottle in the discrete area where this chase took place." (Pet. ¶ 12(1) at 17.)

Murray was convicted of first degree robbery under Penal Law § 160.00 and § 160.15, which provide:

> Robbery is forcible stealing.  A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> 1.  Preventing or overcoming resistance to the taking of the property . . .

Penal Law § 160.00.

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he . . . :
>
> . . .

3. Uses or threatens the immediate use of a dangerous instrument . . .

Penal Law § 160.15.

During his testimony, Murray admitted taking Alom's chain by physical force. (See page 5 above.) Therefore, the only contested issue was whether Murray "threaten[ed] the immediate use of a dangerous instrument." Penal Law § 160.15. Murray testified that he never held or used a bottle nor any weapon to threaten Alom. (See page 6 above.) In contrast, Alom testified that Murray held a broken Snapple bottle toward Alom's body when he took the chain. (See page 3 above.) Murray's entire sufficiency of the evidence claim goes to his own and Alom's credibility. The jury decided that issue against Murray.

On direct appeal, the First Department held that the "[i]ssues of credibility, including the inability of the police to recover the broken bottle used in the robbery, were properly considered by the jury." People v. Murray, 11 A.D.3d 236, 236, 782 N.Y.S.2d 273, 273 (1st Dep't 2004).

The law is well established that questions of witness credibility are jury questions and a federal habeas court may not reassess the jury's finding of credibility: "'[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.'" Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (Peck, M.J.) (quoting Anderson v. Senkowski, No. CV-92-1007, 1992 WL 225576 at *3 (E.D.N.Y. Sept. 3, 1992), aff'd mem., 992 F.2d 320 (2d Cir.1993)).[24]

_____

[24]    See also, e.g., Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *31-33 (S.D.N.Y. Jun. 10, 2005) (Peck, M.J.); Huber v. Schriver, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) (continued...)

The fact that Alom was the only eyewitness and his testimony was the only evidence against Murray regarding the use of a weapon, and/or that there may have been some inconsistencies between Alom's testimony and his prior statements, does not change the result. See, e.g., Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficiency claim, holding that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony); United States v. Danzey, 594 F.2d 905, 916 (2d Cir.), cert. denied, 441 U.S. 951, 99 S. Ct. 2179 (1979) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."); Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983) ("[T]his was 'not a case in which the sole

---

24/    (...continued)
       ("[M]ost of petitioner's argument rests on the suggestion that the eyewitness testimony was not credible and should not have been given enough weight to result in his conviction. . . . However, under both the state law. . . and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury . . . . "); Carromero v. Strack, 98 Civ. 3519, 1998 WL 849321 at *5 (S.D.N.Y. Nov. 19, 1998) (Peck, M.J.) (evidence sufficient where jury credited prosecution witnesses' testimony "despite some inconsistencies between their trial testimony and prior statements to the police and to the grand jury"); Davis v. Senkowski, No. 97-CV-2328, 1998 WL 812653 at *5 (E.D.N.Y. Aug. 6, 1998) ("The jury here chose to believe [the prosecution witness]'s testimony despite any inconsistencies in the evidence, and I will not reassess that decision."); Williams v. Bennet, 97 Civ. 1628, 1998 WL 236222 at *5 (S.D.N.Y. Apr. 20, 1998) ("Williams relies on inconsistencies in his victim's trial testimony as compared to her statements to the police, the District Attorney's office and before the grand jury.  These inconsistencies were placed before the  jury  by the defense, which made them a central focus of its case.  The jury's decision to credit [the victim]'s testimony, despite its inconsistencies, over Williams' testimony, is fully supported by the record."); Taxiarhopoulos v. Spence, No. CV 92-0790, 1992 WL 403112 at *4 (E.D.N.Y. Dec. 28, 1992) (The petitioner "cannot show that the evidence was insufficient to support conviction.  For example, he challenges the credibility of the main prosecution witness . . ., pointing to alleged inconsistencies in his testimony.  This, however, was an argument made to, and properly resolved by, the trial jury."); Fagon v. Bara, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony").

witness was uncertain of his identification . . . [n]or is it one of testimony incredible as a matter of law.'"); Means v. Barkley, 98 Civ. 7603, 2000 WL 5020 at *4 (S.D.N.Y. Jan. 4, 2000) ("The testimony of a single uncorroborated witness is sufficient to achieve a showing of guilt beyond a reasonable doubt . . . even if that witness's testimony is less than entirely consistent. . . . The alleged inconsistencies in Mendez's description of Means's earring and facial hair are insufficient to undermine Mendez's testimony.").[25/]

   Alom's testimony established that Murray had a broken bottle in his hand which he used threateningly to steal the chain.  (See page 3 above).  Alom's testimony, if believed by the jury, was more than sufficient to support Murray's conviction for first degree robbery.  There is no requirement under New York law that the weapon or dangerous instrument be recovered by the police or introduced in evidence at trial.  See, e.g., People v. Vincent, 231 A.D.2d 444, 445, 647 N.Y.S.2d 205, 205-06 (1st Dep't) ("[I]t was unnecessary for the police to recover the weapon in order to prove [defendant's] guilt beyond a reasonable doubt."), appeal denied, 89 N.Y.2d 931, 654 N.Y.S.2d 733 (1996); People v. Burgos, 186 A.D.2d 396, 397, 588 N.Y.S.2d 190, 190 (1st Dep't 1992) ("[C]omplainant's testimony regarding a knife was sufficient to establish the threatened use of a dangerous instrument."), appeal denied, 81 N.Y.2d 837, 595 N.Y.S.2d 736 (1993); People v. Jacobs, 137 A.D.2d 834, 834-35, 525 N.Y.S.2d 297, 298 (2nd Dep't 1988) (Possession of a dangerous instrument at the time of the robbery was "established by legally sufficient evidence" where "[t]he complainant testified that the defendant placed a razor to his throat during the course

---

[25/] See also, e.g., Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *16 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (testimony of single witness sufficient); cases cited in prior fn.

of the robbery" even though the "complainant did not describe the razor in detail."); <u>People</u> v. <u>Azzara</u>, 138 A.D.2d 495, 495, 525 N.Y.S.2d 890, 891 (2nd Dep't) ("[T]estimony of the complainant alone was sufficient" to demonstrate "that he threatened her with a handgun."), <u>appeal denied</u>, 71 N.Y.2d 1023, 530 N.Y.S.2d 558 (1988); <u>see also</u> <u>Ledesma</u> v. <u>Cunningham</u>, 03 Civ. 6322, 2004 WL 1775677 at *12 (S.D.N.Y. Aug. 10, 2004) (Habeas corpus petition alleging insufficiency of the evidence was denied because even though "no weapon or dangerous instrument was ever offered in evidence," "'the testimony of a single, uncorroborated eyewitness is generally sufficient.'"), <u>report & rec. adopted</u>, 2004 WL 2319326 (S.D.N.Y. Oct. 14, 2004).

Accordingly, Murray's habeas claim that the evidence was insufficient because, <u>inter alia</u>, the police did not find the broken bottle, should be DENIED.

## III.   MURRAY'S CLAIM OF PROSECUTORIAL MISCONDUCT IS BARRED BY ADEQUATE AND INDEPENDENT STATE LAW GROUNDS

Murray's second habeas claim asserts that he was deprived of his "due process right to a fair trial" because of prosecutorial misconduct during summation.  (Ex. H:  Pet. ¶ 12(2) at 17.) Murray claims that the prosecutor "denigrated defense counsel and [Murray] by calling the defense absurd and ridiculous, improperly vouched for [Alom's] credibility, characterized [Murray] as a liar, and appealed to the jury's sympathy."  (<u>Id.</u>)  The First Department held that "[d]efendant's challenges to the People's summation are unpreserved," but "[w]ere we to review these claims, we would find that the challenged remarks generally constituted fair comment on the evidence, made in response to defense arguments, and that the summation did not deprive defendant of a fair trial."  <u>People</u> v. <u>Murray</u>, 11 A.D.3d 236, 236, 782 N.Y.S.2d 273, 273 (1st Dep't 2004).

   **A.**     **Adequate and Independent State Ground Doctrine[26/]**

   The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice."   Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[27/]

---

[26/]     For additional decisions by this Judge discussing the adequate and independent state ground doctrine in language substantially similar to that in this entire section of this Opinion & Order, see, e.g., McLean v. Conway, 06 Civ. 0807, 2006 WL 2405067 at *16 (S.D.N.Y. Aug. 21, 2006) (Peck, M.J.); Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *9 (S.D.N.Y. May 16, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1763678 (S.D.N.Y. June 23, 2006); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *34 (S.D.N.Y. May 1, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *17-18 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *18-21 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *18- 21 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *8-9 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mercado v. Portuondo, 99 Civ. 11234, 2000 WL 1663437 at *12 (S.D.N.Y. Nov. 3, 2000) (Peck, M.J.), report & rec. adopted, 2001 WL 987926 (S.D.N.Y. Aug. 29, 2001), aff'd, No. 01-2701, 77 Fed. Appx. 546, 2003 WL 22134571 (2d Cir. Sept. 15, 2003); Owens v. Portuondo, 98 Civ. 6559, 1999 WL 378343 at *5 (S.D.N.Y. June 9, 1999) (Peck, M.J.), aff'd, No. 99-2416, 205 F.3d 1324 (table), 2000 WL 246226 (2d Cir. Feb. 22, 2000).

[27/]     See also, e.g., Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Reyes v.
(continued...)

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state [ ] that its judgment rest[ed] on a state procedural bar.'"  Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724).  The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."  Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[28/]  Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas."  Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

---

[27/]     (...continued)
Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

[28/]     See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

**B.**     **Murray's Claims Are Procedurally Barred**

Murray raised on direct appeal the same claims of prosecutorial misconduct that he now raises on his habeas petition.  (See page 14 above.)  The First Department held that Murray's "challenges to the People's summation are unpreserved and we decline to review them in the interest of justice.  Were we to review these claims, we would find that . . . the summation did not deprive defendant of a fair trial."  (Quoted in full on page 15 above.)

State courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim – every state appeal, every denial of state collateral review – in order that federal courts might not be bothered with reviewing state law and the record in the case.

Coleman v. Thompson, 501 U.S. 722, 739, 111 S. Ct. 2546, 2559 (1991).

Furthermore, unlike the situation where the state court holds that claims were either unpreserved or without merit, which the Second Circuit has found is usually too ambiguous to preclude habeas review,[29] here the First Department explicitly stated that it found Murray's claim "unpreserved," People v. Murray, 11 A.D.3d 236, 236, 782 N.Y.S.2d 273, 273 (1st Dep't 2004), and the fact that the First Department also stated the conclusion it would reach on the merits "[w]ere we to review these claims," id. at 236, 782 N.Y.S.2d at 273, does not change the result.  See, e.g., Fama

---

[29]     See, e.g., Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have found a state court's reliance on a state procedural bar to be ambiguous, and thus refused to invoke a procedural bar, where . . . the state court rejected defendant's claims on appeal as 'either meritless or unpreserved.'");  Tankleff v. Senkowski, 135 F.3d 235, 247 (2d Cir. 1998);  Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992).

v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 & n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved"); Glenn v. Bartlett, 98 F.3d 721, 724-25 & n.3 (2d Cir. 1996) (state decision which denied prosecutorial misconduct claim as not preserved for appellate review represented an independent and adequate state procedural ground even though court addressed merits of claim "in the interests of justice"), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (state decision which denied claims as procedurally barred but then alternatively addressed merits rested on adequate and independent state grounds).[30/]  Thus,

---

[30/]     See also, e.g., Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10 (1989); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *35 (S.D.N.Y. May 1, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *9 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *18-19 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.) (citing my prior decisions); James v. Ricks, No. 01 CV 4106, 2003 WL 21142989 at *12 & n.8 (E.D.N.Y. Mar. 6, 2003) (state decision which "found the petitioner's ineffective assistance of counsel claim was procedurally barred and without merit" rested on adequate and independent state grounds.); Campos v. Portuondo, 193 F. Supp. 2d 735, 744 n.4 (S.D.N.Y. 2002) ("The language used by the Appellate Division in Campos' case is in contrast with the language used in those cases where the state court found a claim to be 'either meritless or unpreserved.'  Unlike the conjunctive 'and,' the use of the disjunctive 'or' in such cases obviously does not clarify whether the court's ruling rests on a procedural bar."), aff'd, 320 F.3d 185 (2d Cir.), cert. denied, 540 U.S. 958, 124 S. Ct. 415 (2003); Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *10 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) (decision that claim is unpreserved but were it to be reviewed is without merit, sufficient for procedural bar); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *9 & n.8 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Jones v. Duncan, 162 F. Supp. 2d 204, 211 (S.D.N.Y. 2001) (Peck, M.J.) ("The First Department's use of the conjunctive 'and' rather than the disjunctive 'or' clearly shows that the First Department found these claims to be unpreserved."). Martinez v. Greiner, 01 Civ. 2911, 2001 WL 910772 at *9 & n.9 (S.D.N.Y. Aug. 13, 2001) (Peck, M.J.), report & rec. adopted, 2003 WL 1936191

(continued...)

the First Department's decision here unambiguously rested on a state procedural ground.[31/]

Under New York law, "[a]s a general rule points which were not raised at trial may not be considered for the first time on appeal."  People v. Thomas, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[32/]  In order to preserve his prosecutorial misconduct

---

[30/]     (...continued)
(S.D.N.Y. Apr. 23, 2003); Ferguson v. Walker, 00 Civ. 1356, 2001 WL 869615 at *8 & n.19 (S.D.N.Y. Aug. 2, 2001) (Peck, M.J.), report & rec. adopted, 2002 WL 31246533 (S.D.N.Y. Oct. 7, 2002); Simpson v. Portuondo, 01 Civ. 1379, 2001 WL 830946 at *10 (S.D.N.Y. July 12, 2001) (Peck, M.J.); Simmons v. Mazzuca, 00 Civ. 8174, 2001 WL 537086 at *10 (S.D.N.Y. May 21, 2001) (Peck, M.J.) (adequate and independent state ground even though First Department stated its conclusion as to merits of claims "were we to review" them); Yeung v. Artuz, 97 Civ. 3288, 2000 WL 145103 at *10 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.) (same); Cruz v. Greiner, 98 Civ. 7939, 1999 WL 1043961 at *12-13 (S.D.N.Y. Nov. 17, 1999) (Peck, M.J.) (claims First Department held to be "unpreserved and without merit" not cognizable on habeas review); Chisolm v. Headley, 58 F. Supp. 2d 281, 287 (S.D.N.Y. 1999) (Mukasey, D.J. & Peck, M.J.); Torres v. Irvin, 33 F. Supp. 2d 257, 274 (S.D.N.Y. 1998) (Cote, D.J. & Peck, M.J.) (adequate and independent ground even though First Department "went on to dismiss the [judicial misconduct] claim on the merits"); Williams v. Bennet, 97 Civ. 1628, 1998 WL 236222 at *6 (S.D.N.Y. Apr. 20, 1998); Vera v. Hanslmaier, 928 F. Supp. 278, 285 (S.D.N.Y. 1996) (Jones, D.J. & Peck, M.J.); Liner v. Keane, 95 Civ. 2738, 1996 WL 33990 at *7 (S.D.N.Y. Jan. 3, 1996) (Wood, D.J. & Peck, M.J.).

[31/]     The New York Court of Appeals denied Murray's application for leave to appeal.  People v. Murray, 3 N.Y.3d 759, 788 N.Y.S.2d 675 (2004). The Supreme Court held in Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991), with respect to unexplained orders, that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Id. at 803, 111 S. Ct. at 2594. Petitioner has presented no facts to rebut that presumption here.

[32/]     C.P.L. § 470.05(2) provides, in relevant part:

For the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing
(continued...)

claim, Murray was required to object at the time the statement was made.  E.g., People v. Campbell,

813 N.Y.S.2d 313, 313 (2d Dep't 2006) ("The defendant's claim that the prosecutor's allegedly

improper comments during summation require reversal is unpreserved for appellate review since the

defendant failed to raise any objection to the comments at trial."); People v. Jimenez, 22 A.D.3d 423,

424, 805 N.Y.S.2d 2, 3 (1st Dep't 2005) ("Also unpreserved for failure to object are defendant's

claims with respect to the prosecutor's comments."); People v. O'Flaherty, 16 A.D.3d 121, 121, 789

N.Y.S.2d 890, 890 (1st Dep't) ("By failing to object, or by making generalized objections, defendant

did not preserve his present challenges to the prosecutor's summation."), appeal denied, 4 N.Y.3d

855, 797 N.Y.S.2d 429 (2005); see, e.g., Olivo v. Thornton, 2005 WL 3292542 at *9 ("In order to

preserve her erroneous jury charge claim for appellate review, [petitioner] was required to object at

the time of the instructions.") (citing N.Y. cases); Roberts v. Batista, 01 Civ. 5264, 2003 WL

1900866 at *9 (S.D.N.Y. Apr. 16, 2003) (Peck, M.J.) ("In order to preserve his prosecutorial

misconduct claim for appellate review, [petitioner] was required to object at trial to the prosecutor's

statements during summation.") (citing N.Y. cases).[33]

---

32/ (...continued)

  the same.  Such protest need not be in the form of an "exception" but is sufficient if
  the party made his position with respect to the ruling or instruction known to the
  court, or if in response to a protest by a party, the court expressly decided the
  question raised on appeal.  In addition, a party who without success has either
  expressly or impliedly sought or requested a particular ruling or instruction, is
  deemed to have thereby protested the court's ultimate disposition of the matter or
  failure to rule or instruct accordingly sufficiently to raise a question of law with
  respect to such disposition or failure regardless of whether any actual protest thereto
  was registered.

33/ See also, e.g., People v. Pettiford, 28 A.D.3d 687, 687, 812 N.Y.S.2d 371, 371 (2d Dep't)
                          (continued...)

A party must make a specific protest at the time of a claimed error to preserve an issue for appellate review. E.g., People v. Hardy, 4 N.Y.3d 192, 197 n.3, 791 N.Y.S.2d 513, 517 n.3 (2005). Failure to specify the grounds for a claim of error at the time of an objection (either because an objection is general, or because it specifies a different ground than that raised on appeal) renders claims not specified unpreserved for appellate review. E.g., Harris v. Woods, 2006 WL 1140888 at *35; Olivo v. Thorton, 2005 WL 3292542 at *10 ("Under New York law, a party's failure to specify the grounds for its general objection also renders its argument unpreserved for appellate review.") (citing N.Y. cases); People v. Kello, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111 (2001) (Claim is unpreserved where defendant "never based his trial objection to the 911 tapes on the Confrontation Clause. Rather, the only issue raised before the trial court was the erroneous admission of the tapes under our State common-law hearsay rule. . . . The defendant's failure to raise a Confrontation Clause objection precluded the trial court and prosecution from considering and, thus, avoiding any constitutional error which . . . differs from the trial evidence error which was preserved."); People v. Tonge, 93 N.Y.2d 838, 839-40, 688 N.Y.S.2d 88, 88 (1999) ("a party's failure

---

33/      (...continued)
("The defendant's contentions concerning the admission into evidence of what he claims were uncharged crimes . . . are unpreserved for appellate review, as he did not object to this evidence at trial."), appeal denied, 7 N.Y.3d 761, 819 N.Y.S.2d 886 (2006); People v. Ramos, 26 A.D.3d 197, 197, 808 N.Y.S.2d 897, 898 (1st Dep't) ("Defendant's challenges to the court's jury instructions are unpreserved."), appeal denied, 6 N.Y.3d 851, 816 N.Y.S.2d 757 (2006); People v. Griffin, 24 A.D.3d 237, 238, 808 N.Y.S.2d 163, 163 (1st Dep't 2005) ("Defendant took no exception to the court's charge. . . . Accordingly, his present arguments are unpreserved."), appeal denied, 6 N.Y.3d 851, 812 N.Y.S.2d 453 (2006); People v. Garcia, 23 A.D.3d 293, 294, 803 N.Y.S.2d 908, 908 (1st Dep't 2005) ("Defendant's argument that evidence of uncharged crimes was improperly admitted also is unpreserved.").

to specify the basis for a general objection renders the argument unpreserved for [state appellate] review."); People v. Robinson, 88 N.Y.2d 1001, 1002, 648 N.Y.S.2d 869, 870 (1996) ("to frame and preserve a question of law reviewable by this Court, an objection or exception must be made with sufficient specificity at the trial, when the nisi prius court has an opportunity to consider and deal with the asserted error."); People v. Velasco, 77 N.Y.2d 469, 474, 568 N.Y.S.2d 721, 723 (1991); People v. Dien, 77 N.Y.2d 885, 886, 568 N.Y.S.2d 899, 900 (1991).

Here, defense counsel objected several times during the prosecutor's summation, but in all but one instance he merely said "objection" and failed to specify his grounds for objecting. (See pages 8-12 & nn.3-7 above.)  Further, defense counsel objected to only one of the specific statements which Murray raises in his habeas petition:   Murray claims that the prosecutor's characterization of "defense counsel's arguments as attempts to 'fog' or 'cloud' the window" was improper.  (Pet. ¶ 12(2) at 18.)  Defense counsel's objection to that statement was sustained.  (See pages 8-9 & n.3 above.)  And when defense counsel moved for a mistrial based on the "fog" argument, the trial judge reminded him that he had sustained that objection.

Both the Supreme Court and the Second Circuit have held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground.  See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S. Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state ground); Murray v. Carrier, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-48, 2650 (1986) (same); Franco v. Walsh, 73 Fed. Appx. 517, 518 (2d Cir. 2003) (finding petitioner's claim of an erroneous jury charge procedurally defaulted because "[n]o contemporaneous objection to the charge

was lodged, and the Appellate Division found that the issue was therefore unpreserved."); <u>Garcia</u> v.

<u>Lewis</u>, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent

application of its contemporaneous objection rules") (citing <u>Bossett</u> v. <u>Walker</u>, 41 F.3d 825, 829 n.2

(2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal

habeas review), <u>cert. denied</u>, 514 U.S. 1054, 115 S. Ct. 1436 (1995), & <u>Fernandez</u> v. <u>Leonardo</u>, 931

F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default

under C.P.L. § 470.05(2)), <u>cert. denied</u>, 502 U.S. 883, 112 S. Ct. 236 (1991)); <u>Glenn</u> v. <u>Bartlett</u>, 98

F.3d at 724-25 (failure to object constituted adequate and independent state ground); <u>Velasquez</u> v.

<u>Leonardo</u>, 898 F.2d at 9 (violation of New York's contemporaneous objection rule is an adequate and

independent state ground).[34]

---

[34]     <u>See also</u>, <u>e.g.</u>, <u>Harris</u> v. <u>Woods</u>, 2006 WL1140888 at * 36; <u>Olivo</u> v. <u>Thorton</u>, 2005 WL
3292542 at *10; <u>Yapor</u> v. <u>Mazzuca</u>, 04 Civ. 7966, 2005 WL 894918 at *23 (S.D.N.Y.
Apr. 19, 2005) (Peck,M.J.) (failure to object to jury instruction constituted adequate and
independent state ground), <u>report & rec. adopted</u>, 2005 WL 1845089 (S.D.N.Y. Aug. 3,
2005); <u>Otero</u> v. <u>Eisenschmidt</u>, 2004 WL 2504382 at *20; <u>Montalvo</u> v. <u>Annetts</u>, 02 Civ. 1056,
2003 WL 22962504 at *20 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.); <u>Figueroa</u> v. <u>Greiner</u>, 2002
WL 31356512 at *11-12 ("The Second Circuit has held that the failure to object at trial when
required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and
independent state ground."); <u>Cooper</u> v. <u>LeFevre</u>, No. 94 CV 5958, 1998 WL 386340 at *2
(E.D.N.Y. July 8, 1998) ("[T]he Second Department held that [the petitioner's claim was
unpreserved because] the Petitioner violated the contemporaneous objection rule by failing
to 'raise specific objections to the evidence . . . ' he cited in his appeal as having deprived him
of a fair trial. . . . This Court finds that the Second Department's basis for denying Petitioner's
claim was both independent of the federal question raised by such claim and adequate to
support the judgment.  As a result, this Court is procedurally barred from reviewing the
merits of Petitioner's claim"); <u>Jamison</u> v. <u>Smith</u>, 94 Civ. 3747, 1995 WL 468279 at *2
(E.D.N.Y. July 26, 1995) ("Courts in this circuit have consistently held that the failure to
object contemporaneously . . . constitutes an adequate and independent basis for barring
habeas review.").

Because there is an adequate and independent finding by the First Department that Murray procedurally defaulted on his constitutional claims concerning the prosecutor's summation, Murray would have to show in his habeas petition "cause for the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750, 111 S. Ct. at 2565.[35/] Murray does not allege cause, prejudice or a fundamental miscarriage of justice. Thus Murray's claim is <u>DENIED</u> as procedurally barred from habeas review.[36/]

---

[35/]   See also, e.g., Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995) (fundamental miscarriage of justice may be demonstrated by showing through "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence").

[36/]   In any event, Murray's prosecutorial misconduct claim is meritless.

Prosecutorial misconduct violates a defendant's due process rights only when it is of "sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 3109 (1987); accord, e.g., United States v. Best, 142 Fed. Appx. 500, 501 (2d Cir.) ("We must examine whether the prosecutor's actions 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"), cert. denied, 126 S. Ct. 770 (2005); United States v. Muja, 102 Fed. Appx. 212, 216 (2d Cir. 2004) ("'It is a rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.'"); United States v. Coriaty, 300 F.3d 244, 255 (2d Cir. 2002) (Even on direct federal appeal, "[b]efore a conviction will be reversed, a prosecutor's comments on summation must 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.' The defendant must point to 'egregious misconduct.'") (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 647, 94 S. Ct. 1868, 1871, 1873 (1974)); United States v. Elias, 285 F.3d 183, 190 (2d Cir.) ("To warrant reversal, the prosecutorial misconduct must cause the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.") (internal quotations omitted), cert. denied, 537 U.S. 988, 123 S. Ct. 430 (2002); United States v. McCarthy, 54 F.3d 51, 55 (2d Cir. 1995), cert. denied, 516 U.S. 880, 116 S. Ct. 214 (1995); Blissett v. Lefevre, 924 F.2d 434, 440 (2d Cir.), cert. denied, 502 U.S. 852, 112 S. Ct. 158 (1991); Rosario v. Walsh, 05 Civ. 2684, 2006 WL 1431410 at *21 & nn.40-41 (S.D.N.Y. May 25, 2006) (Peck, M.J.) (citing additional district court decisions).
                                                                                      (continued...)

---

<u>36/</u>    (...continued)
Stated another way, "the law is settled that 'federal habeas relief is not available on the basis of improper prosecutorial statements at trial unless the errors, in context of the summation as a whole, were so fundamentally unfair as to deny petitioner a fair trial.'" Tejada v. Senkowski, 92 Civ. 3012, 1993 WL 213036 at *3 (S.D.N.Y. June 16, 1993), aff'd mem., 23 F.3d 397 (2d Cir.), cert. denied, 513 U.S. 887, 115 S. Ct. 230 (1994).

To properly evaluate the prosecution's actions, the alleged misdeeds must be placed in context, and "[t]he severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." Blissett v. Lefevre, 924 F.2d at 440; accord, e.g., Greer v. Miller, 483 U.S. at 766, 107 S. Ct. at 3109 ("it is important 'as an initial matter to place th[e] remar[k] in context'"); United States v. Best, 142 Fed. Appx. at 501; United States v. McCarthy, 54 F.3d at 55; United States v. Friedman, 909 F.2d 705, 709 (2d Cir. 1990); United States v. Biasucci, 786 F.2d 504, 514 (2d Cir.), cert. denied, 479 U.S. 827, 107 S. Ct. 104 (1986).

First, Justice Tejada sustained the objection to the prosecutor's characterization of defense counsel's arguments as attempts to "fog" or "cloud" the "window." (See pages 8-9 & n.3 above.) Justice Tejada also gave the jury an instruction to disregard any statements which were struck from the record. (See page 13 above.) The jury is presumed to obey a court's curative instruction. See, e.g., Greer v. Miller, 483 U.S. at 767 n.8, 107 S. Ct. at 3109 n.8 ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence . . . , unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions."); Richardson v. Marsh, 481 U.S. 200, 211, 107 S. Ct. 1702, 1709 (1987) ("juries are presumed to follow their instructions"); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 367, 83 S. Ct. 448, 463 (1963) (When a limiting instruction is clear, "[i]t must be presumed that the jury conscientiously observed it.").

Second, the prosecutor's conclusory comment when he asked the jurors "in the interest of justice" to "do [their] duty" was directly responsive to defense counsel's extensive summation argument regarding "justice." (See pages 7 & 12 above.)

Third, the only jury issue at trial was credibility of witnesses. The defense centered around the theory that Alom was not credible and the jury should believe Murray's version of events. (See pages 6-7 above.) Therefore, the prosecutor's comments during summation regarding Murray's and Alom's testimony and credibility were made in direct response to defense counsel's credibility arguments during his summation, were fair comment on the evidence presented at trial, and thus were proper and do not provide a basis for habeas relief. See, e.g., People v. Seit, 86 N.Y.2d 92, 99, 629 N.Y.S.2d 998, 1001 (1995) (Prosecutor's comments did not warrant reversal when made in "fair response to defense counsel's summation");
(continued...)

## CONCLUSION

For the reasons discussed above, Murray's habeas petition is DENIED. A certificate of appealability is not issued. The Clerk of Court is directed to close this case.

SO ORDERED.

DATED:     New York, New York
           December 21, 2006

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies to:     Walter Murray
               Chelsea Chaffee, Esq.

---

36/     (...continued)
People v. Halm, 81 N.Y.2d 819, 821, 595 N.Y.S.2d 380, 381 (1993) ("[T]he prosecutor's closing statement must be evaluated in light of the defense summation, which put into issue the complainants' character and credibility and justified the People's response."); People v. Melendez, 31 A.D.3d 186, 198-99, 815 N.Y.S.2d 551, 559 (1st Dep't 2006) ("The portions of the prosecutor's summation to which defendant objected as 'vouching' were responsive to the defense summations and fair comment based upon the evidence."); People v. Vazquez, 28 A.D.3d 1100, 813 N.Y.S.2d 613 (4th Dep't 2006); People v. Louisias, 29 A.D.3d 1017, 1021, 815 N.Y.S.2d 727, 731 (2d Dep't) (Prosecutor's remarks on summation "were responsive to those of the defense counsel in summation and were fair comment on the evidence presented at trial."), appeal denied, 7 N.Y.3d 814, 822 N.Y.S.2d 489 (2006); People v. Bello, 24 A.D.3d 236, 237, 808 N.Y.S.2d 164, 166 (1st Dep't 2005), appeal denied, 6 N.Y.3d 892, 817 N.Y.S.2d 627 (2006); People v. Parrella, 4 A.D.3d 132, 132, 771 N.Y.S.2d 511, 512 (1st Dep't), appeal denied, 2 N.Y.3d 804, 781 N.Y.S.2d 303 (2004); People v. Farrell, 228 A.D.2d 693, 694, 646 N.Y.S.2d 124, 125 (1st Dep't) ("[T]he prosecutor's comments were within the bounds of fair response to the defense counsel's attack on the credibility of the police witnesses, as well as fair comment on the evidence."), appeal denied, 88 N.Y.2d 984, 649 N.Y.S.2d 391 (1996); People v. Hall, 220 A.D.2d 278, 278, 632 N.Y.S.2d 105, 106 (1st Dep't) ("The prosecutor's comment in summation, that the detective had a job to do and that she did it, did not amount to improper bolstering but rather was a fair response to an implied attack by the defense upon the integrity of the lineup conducted by the detective."), appeal denied, 87 N.Y.2d 846, 638 N.Y.S.2d 605 (1995).